It please the Court, Edie Cunningham of the Federal Defender's Office, on behalf of the Appellant. I'd like to reserve three minutes, if possible. The Fourth Amendment requires a warrant supported by probable cause to obtain the subscriber information associated with an IP address because of what that information can reveal about online activities in the home. As the Supreme Court recently held in Carpenter, the third-party doctrine does not always apply in the digital age. In determining whether to apply it, the Court must consider the extent to which a warrant is needed to protect privacy and security against arbitrary government invasions in light of technological advances. It must also consider the extent to which the sharing of the information is truly voluntary. Applying these principles to the subscriber information associated with an IP address, a warrant is needed. First of all, the sharing of the information is not truly voluntary. We have to have an IP address to use the Internet, to send an email, to do a search on a website, to do anything. We have— Well, Your Honor, as I'm explaining, this is not truly voluntary, and most Americans, 70 percent, do consider their online travels to be private. In Carpenter— Do you think most people have a reasonable expectation of privacy in their IP address? Well, Your Honor, in the linkage of subscriber information with the IP address—now, certainly, the IP address is out there, but it's—the problem arises when police can obtain whose IP address it is. But isn't that like obtaining somebody's name? No, Your Honor, it's not, because— Why not? What happens is when you're searching on the Internet, all of your searches that you conduct, content that you're contributing to online forums— Content aside, if someone just wants to link an IP address with an individual, do you think that that violates a reasonable expectation of privacy? Well, what the police can do with that— But before we get to that point, linking an IP address with an individual, do you think that violates the concept of the reasonable expectation of privacy? Yes, Your Honor, without limits, because once the police get that information, and using a subpoena provides no judicial oversight, then they can go and they can reconstruct a person's past movements on the Internet, whether they're searching for certain diseases on WebMD, what content they're— Maybe a warrant would be required for those types of searches, but just obtaining the name of the person associated with the IP address—tell me what your strongest case is to support the proposition that there's a reasonable expectation of privacy in the name associated with an IP address. Well, Carpenter and Riley and the concurrences in Jones, because, Your Honor— Don't tell me concurrences. So you think Carpenter— Well, Carpenter and Riley, and I think the analysis of the Canadian Supreme Court—I know it's not authority for you, but I think it's right on point and very consistent with our Supreme Court's concerns in Riley and Carpenter, because, Your Honor, there's no oversight of what the police do once they link the subscriber information with your IP address. They can get that information under current law for whatever reason they want, and then they can target political enemies, personal enemies. Well, that may be a different issue, though. We're only talking about, as Judge Rollison said, just getting the identification of the association with the IP address. But, Your Honor— You say it's not entirely or truly voluntary. You could be saying that about most anything we do today, registering your motor vehicle. You know, you're not obligated to do that, but if you want to drive a car, you do that. Bank records, things of that nature. Telephone listing. You want to use a telephone in an old-fashioned—I still use a regular old telephone, so if I want to be listed in the phone book or in AT&T's records, I have to give them certain information. But, Your Honor— How is that different than what we're talking about with the IP address? Excuse me, Your Honor, I'm sorry. What's different is that unless we have a warrant requirement, there is no oversight about what the police do with this information. A phone book is very different. All that's in a phone book— Let me stop you there. We're not dealing right now with what they're going to do with it. The question is whether, for the particular instance of obtaining that information, you need a warrant. It's not whether they somehow abuse that right, or if it's a right, later on. But if we don't require a warrant supported by probable cause, which can limit the use, for example, to say you can use this information to see if an individual has accessed child pornography websites, there's no limit to what they can do, and they're doing it right now. They're surveilling citizens, seeing what they're up to on the Internet, looking at very private information, eviscerating the right to anonymous speech by knowing what — this is an anonymous IP address, but once you know the household that it's associated with, it's no longer anonymous. And so police can ascertain exactly what kind of activities you're up to on the Internet. I understand your argument, but let me ask you this. Yes, Your Honor. Why does — you know, we had a case about 10 years ago called Forrester, where we held specifically that an IP address is not — one does not have a reasonable expectation of privacy in an IP address. Why, given the narrow — you know, in the Carpenter decision, the Supreme Court said, you know, this is a narrow decision, we don't — there's issues we don't address, and they specifically continue to sanction the approach in Smith, which dealt with pen registers. And our decision in Forrester specifically relied on Smith. So why aren't we obligated, as a three-judge panel, to follow what we said in Forrester? The Court did not address this issue in Forrester. In Forrester — What did it — it said the reasonable expectation of privacy in the IP address — in the to and — to, from, and IP address. Your Honor, in Forrester, the government already knew the defendant's identity. So they asked for a pen register analog, which only allowed the government to ascertain the names of the websites or the IP addresses of the websites visited. So just the website and not any content searches or — and not any content contributions. The to, from addresses of the email and the total volume of information. There was no ability, with what went on in Forrester, to ascertain specific searches, browsing history, search terms, anonymous contributions to websites. And actually, in Forrester, the Court said, look, if this did give the government the ability to ascertain content, if it did not just give the website visited, but the searches conducted within that website or the pages viewed within that website, then that would be a very different story. So Forrester's holding was limited. Now there are some — But the Supreme Court said in Carpenter, it went out — it seemed to me it went out of its way to say this is a — they use the word unique case, limited to the specific facts. And so if we have to draw a distinction or the best analogy between Forrester and Carpenter, it seems to me Forrester is more in line factually than is Carpenter in our case. Well, Your Honor, as I've explained, Forrester is very different. And this Court in Forrester expressed grave concerns about the ability to ascertain content.  Carpenter is very different. But I'm asking you, it seems to me that Forrester is more analogous. Why is it not more analogous than Carpenter, which was a totally different situation? Well, first of all, at the time of Forrester, courts of appeals were not at liberty to analyze whether the third-party doctrine should apply, because that was, you know, straight law at that time. Carpenter changed that and said we have to really look at this. What was at issue at Carpenter's was seven days of cell site location information, which as the dissenters pointed out, really doesn't reveal anything about content. It just, within a cone-shaped area, tells you where you've been. Well, that was the problem that the Supreme Court had with getting the document, getting that information, because they said people have a right to privacy in their location and where they're going, right? Well, that's part of it, but also the concern of the majority in Carpenter and the majority of Riley was what where you visit reveals about your familial, sexual, political, religious associations. And even though they couldn't pinpoint that in Carpenter, the court was very concerned that, you know, the police may be able to get a good idea of where you're visiting, what kind of private activities you're engaging in. Well, online, once they know who the IP address is linked to, they can tell exactly what websites you're visiting, exactly what searches you're conducting, exactly what content you're contributing. They may need a warrant for that. No, they do not. No, they may. You're going the next step. Well, Your Honor. In Carpenter, the very, using the towers and the pings from the towers, gave you the information exactly where the person was without that person knowing that, right? Yes, Your Honor. That seems to me qualitatively different than finding out who's the person associated with the phone or the IP address or whatever the audience might be, okay? Then the next step is, do they need a warrant for the next step? It seems to me that's the difference here. Well, the problem with that, Your Honor, is that we have very technologically savvy people in our police departments. I mean, we have lay people who can do this. But why couldn't you challenge, why couldn't you move to suppress the information that's obtained after the identification if there were no warrants sought for that? To me, that would be the logical way to attack this, is to, if your complaint is about the information that's garnered after the identification, is to attack that portion of the police investigation as opposed to saying that the identity is protected. Well, Your Honor, the problem with that is that sometimes if the police are surveilling you without a good reason, no one's ever going to know about that. It's not going to be introduced as evidence in court. They're just going to be surveilling you. So there needs to be a warrant requirement so that police do not abuse this power. Because as it stands now, once they get that subscriber information with a subpoena, which involves no judicial oversight, they can go back and they can find out all kinds of things about my household. But if it's never used as evidence in a case, I don't understand why that's problematic for purposes of a criminal case. Well, it's problematic for the Fourth Amendment. The Fourth Amendment is supposed to protect our privacy. And if the police is out, if police... But the remedy for a Fourth Amendment violation is suppression of evidence that's used in a criminal case. You're kind of, to me, you're kind of asking us to make a global Fourth Amendment ruling even when there's no criminal case that results from the police conduct. Well, yes, Your Honor, because the Fourth Amendment really, as the Supreme Court has said, is suppressing evidence in criminal cases. It has to do with protecting the privacy rights of citizens, protecting citizens against surveillance by the government, and, you know, protecting against intrusions into familial, political... But for us to have jurisdiction over the issue, doesn't it have to be in a concrete, factual setting? We can't just say we're going to hold that the police have violated the Fourth Amendment if they look, if they have the potential to look at all of this information. That would be a really big extension of the Fourth Amendment going outside a particular criminal case or outside of a civil case where there's been an invasion of privacy assertion to just say because there's a possibility that this may be abused, the Fourth Amendment is triggered? Well, yes, Your Honor, I think that is exactly what the Fourth Amendment is supposed to do. That's exactly what the Supreme Court has said, that we need to enforce the degree of privacy that was enforced at the founding and as we continue to have reasonable expectations of privacy. And I certainly doubt that the Framers would have approved of government officials being able to go online and see exactly the most intimate details of a household's lives based on these searches. Counsel, do you know if any circuits, since Carpenter came down, have any other circuits addressed this issue? No circuit, none that I have been able to find, and none have addressed these privacy concerns and the information that can be revealed by the linkage of subscriber information with the IP address. But they haven't been asked to go that far. But several circuit courts have ruled that the IP address itself is not subject to a warrant. Yes, Your Honor, but I'm not sure that they have. That would be the First, Fourth, and Fifth, right? So all the circuits that now deal with it, I think you indicated that prior to Carpenter, the circuit courts didn't deal with the third-party doctrine too much. But now they do, and it seems to be unanimous. Well, Your Honor, but none of those cases, none of the cases that I've seen have even considered the implications for the invasion of privacy and security that is possible. I don't think they really just consider the technological possibilities. The record in this case, before the district court, did it develop this whole, you know, what's capable, what can happen with it if you have the IP address? No, Your Honor. Well, they did cite the Reed case, the New Jersey Reed case, which had held that there is a reasonable expectation of privacy and the subscriber information linked to an IP address. And the Reed case does discuss this very concern. That's the New Jersey case, State v. Reed. So that was cited, and it was argued that there was a reasonable expectation of privacy in the linkage of this information. Okay, I'll give you some time for rebuttal. Thank you. May it please the Court, Erica Sager on behalf of the District of Arizona. The court in this case should, the defendant's convictions for conspiracy to produce child pornography and possession of child pornography in this case should be affirmed. Because the defendant spent their time talking about Carpenter, I'd like to start with the Carpenter issue in this case. And I think there are a couple of factual distinctions that should be made between what the police conduct was in Carpenter and what the police conduct was in this particular case. Because they're important distinctions. In this case, the state actors got a grand jury subpoena for the subscriber information associated with an IP address that was flagged by AOL and went through NCMEC and then was referred to the local authorities for prosecution. What they obtained from that grand jury subpoena was the subscriber name, which in this case was a business, and the address where that IP address was assigned to. Meaning that anyone accessing the Internet in that residence would have that IP address. That's it. Following the state receiving that information, there was then a actual search warrant for that residence and the case proceeded on. That is markedly different from what happened in the Carpenter case. In the Carpenter case, the government, using administrative subpoenas, received somewhere between seven and 127 days of cell site data that allowed them to track an individual's cell phone, which presumably was on the individual, and in fact put him in a location close to various robberies that had occurred, I believe, of T-Mobile and other Radio Shack and I believe a few other businesses. And the Supreme Court's concern with the government being able to obtain that information without a search warrant was that it could extend a detailed log of a person's movements over several years. And their concern in that case was that there needed to be some sort of showing a probable cause in order to be able to invade someone's privacy, such as to track them over an extended period of time. That's not what happened in this case. So let me, let's just back up for just a moment so I can make sure I understand thoroughly what happened here. So what specifically was referred to the police department, the local police department? What information was conveyed to them? The information that was contained within the NCMEC, the National Center for Missing and Exploited Children, the information contained within their tip that resulted from AOL's tip. So the information that was included in there was the information provided from AOL, which included the IP address that was flagged by AOL as having sent child pornography. That information was geolocated to Tucson, Arizona, where the defendant in this case lived. And the attachment itself that was part of the email that was sent was included as well as, my understanding is the content of the email, but not in the way that we would traditionally think of the content of the email. So then, the local police wanted to link, as Judge Rawlinson was discussing earlier, the IP address to a particular person or location? To the location, Your Honor. It would not be to a particular person. What they were seeking was information on who was essentially paying the internet, whether it was a person or a business, for the IP address. So then, with the location information, they would have the IP address associated with a particular location. Correct. Right? And then, they could use other investigative methods to figure out who lived there? Correct, Your Honor. That right? Correct. And that is, in fact, what they did in this case. It's not always to a business. Oftentimes, the IP address is to a particular individual. Absolutely. Sometimes it's to an individual. Sometimes it could be to, for example, Starbucks, who has free internet for individuals who are at Starbucks, and anyone can connect to that internet and therefore would reflect that they're using that IP address. So sometimes it's a business. Sometimes it's an individual. Sometimes it's an individual cell phone. It just depends on the nature of where that device or what device is connecting to the internet and what location. Let me ask you this, even without the location information, what could the local police have done with that IP address that they had been alerted to? Your Honor, I guess I don't understand. I'm not sure that the record is developed about what technological abilities can be, just having an IP address, what you can do with that IP address. Right. There's nothing in the record about that. And to be completely honest, I'm not entirely sure that I know what law enforcement has the ability to do if they have a particular individual's IP address. I'm probably the least technical person in this room, but it seems to me if you had the IP, if you had the address, the email, you could write to the sender. Well, just because you have the IP address doesn't necessarily mean that you have the email address. No, Your Honor. In this case, the information that was provided was this particular email address was using this particular IP address at a specific time and date. But generally speaking, no, you would not get an email address just because you had someone's IP address. There would potentially be a circumstance where that would happen if that was the email address used to register with the internet service provider, for example. But anyone can have multiple different email addresses that they access from their home computer. Right. And the email in and of itself is not tied to a specific IP address. Ms. Figueroa, as I understand Ms. Cunningham's argument, it's not so much the obtaining of the identification of the person associated, or the business in this case, associated with the IP address, but the Pandora's jar of horribles that might come from that, having that knowledge. Would you comment on that? Your Honor, that's not what happened in this case. But I think that's true. But that's her argument. To be honest, I don't have the understanding of what can be obtained with an IP address in and of itself to be able to adequately provide the court with that information. I will tell the court that, for example, in the Smith case, or actually in Forrester, for example, in that case, the government or the law enforcement was obtaining all of the IP addresses that the known IP address was contacted with. And so in that case, it was considerably more information being provided to the government via an administrative process than in this case. And in that case, the government was able to obtain all of the websites, for example, that a particular IP address accessed through an administrative process, which is substantially more information than what was obtained in this case. So I guess the counsel was saying is that the police should have obtained a warrant when they went to get the, when they had the IP address and they wanted to link it. That's my understanding. Right. Because then when you had the two, they could then do all this sort of historical analysis of where, where somebody went on the Internet. Is that right? Is that the way you understand it? That is what I understand their argument to be. Yes, Your Honor. That with that, well, they, they had the, we already, the government already had the IP address. So if the concern is that linking it to a specific address and person and person, well, in this case, it was not a person. It was a business. Right. Then, but if the concern is that the law enforcement could go out and collect all this information, that could be done with the information that was provided already, which was the IP address. So they had, they had the IP address and the email address from this particular. They had an email address. An email address. Correct, Your Honor. Yes. And so that, if the concern is that they could, that the law enforcement would be using that IP address to track this individual through the Internet, that could have been done, that, that can be done without ever needing to use a subpoena to get the subscriber information because that information was already voluntarily turned over to AOL, who then, you know, provided it to the government in accordance with their disclosure. So, but once they had the, the IP address and the location, they could attempt to determine who actually was using it. Well, Your Honor, what they did in this case is they got a search warrant for the residents that was associated with the IP address in an attempt to identify the individual that was engaged in the trading of child pornography. So it, yes, the law enforcement was attempting to identify that person, and the first step after receiving the location information was to get a search warrant for that residence to look for evidence of who that individual was. To what extent does Forrester still apply here? Your Honor, I think Forrester withstands Carpenter, and even Carpenter directly talks about how it is very limited in its scope of what the intent of its holding is to apply to, you know, information that is obtained over a long period of time that allows the government to track an individual without a warrant, which is, as I pointed out, not what happened in this case. This was a very isolated time frame, time period within the, the date, and it was a one-time, you know, action on behalf, or that the, was, the one-time IP address that was used by the individual and the defendant in this case, ultimately. The other two issues that are raised by the defendant in this case, the, the first one is foreclosed by this court's holding in Guerrero. The, the issue, or the, the suppression theory raised by the defendant in this case was not addressed before the district court. This court's holding in Guerrero just a few months ago is directly on point with the, without a showing of good cause, it's deemed waived. The only good cause that's been asserted in the reply brief in this case is an oversight, which is not good cause. The final issue raised by the defendant in this case is whether or not there was probable cause for the search warrant for the residents associated with the IP address. Under this court's holding in Hay, there was substantial probable cause. The, the detective in this case articulated multiple different factors of why he believed that there would be evidence in the place that they sought to search via the search warrant. And in any event, good, good faith would apply if this court would determine that there is not adequate information contained within the search warrant to establish probable cause. And absent any other questions, the government will submit. Okay, thank you. I'll attempt to answer some of the questions asked by the court. I didn't know much about this either until I started working on this case. But what happens is that an IP address can be used as a search term to find out where you've been on the internet, what content you've contributed, what searches you've been conducting. That's how advertisers target us, basically is with IP addresses. So, but the police, they, the local police had the IP address. Well, yes. It was sent to them. Right, right. But they've got this address and then they've got an attachment to this, what's the name of the child, what's the name of that agency? NCMIC. Yes. NCMIC. Yes. Sends them this information. Well, it's the IP. So, what are they supposed to do with it? Just say, okay, we've got this information, we've got an IP address, we have an email address. Looks like there might be child pornography going on here of some sort. What do they do? Well, Your Honor. Why can't they say, they must have these highly technological people that they could call upon to say, well, let's. Well, one thing. Can we search, can we do an internet search with this IP address? Well, the email address did not use anybody's real name. Yes, but. That didn't give any information. They don't know whose IP address that is or what household it belongs to until they get that information from the internet service provider. As of this point in time, that information is not public. The only person or entity who knows that is the internet service provider. That's why we maintain you, the police should have to get a warrant to get that information from the internet service provider. In order to make sure they have a legitimate reason for finding out exactly what household is, did that particular internet activity or engaged in that activity, and to make sure that they can't go back and monitor what that household has been doing for months before and months previous. The linkage, as Judge Rawlinson said earlier, that in your view is what's critical here. Yes, and I would point the court to the. And the argument is that I, you know, my internet, I have a reasonable expectation of privacy. In what? Well, when a person goes online. So when I go online, I have a reasonable expectation of privacy that. Well, for example, say someone is. That no one is looking? Is afflicted with a disease and goes online to search for certain kinds of pancreatic cancer or sexually transmitted diseases. The only thing that's being shared when we do that is a string of numbers and nobody knows who those numbers are associated with except for the internet subscriber. Once the police are able to figure out who has subscribed to that IP address, then they know what you've been doing on the internet. I would also point out that. They're not doing anything close to that in this case. But they can, Your Honor. Nothing would stop them from doing that. But I'm concerned about, not concerned, but it seems to me the description of Forrester and the intrusion in Forrester was much greater than the intrusion here. It seems to me it falls somewhere between, this case falls far side away from Carpenter. In other words, Forrester lies somewhere between Carpenter and Van Dyck. Well, Your Honor, I. Of intrusion. Your Honor, I disagree because they were limited in what they could find out in Forrester. Here, without a warrant and a limit, limits that the court could place in a warrant, the police can do whatever they want with that information. They can find out what you've been doing for three or four months before they get the subscriber information and for at least three or four months after. They can basically surveil your online travels on the internet for a long period of time. Could have, but didn't. Sorry. Go ahead. I realize I'm out of time. No, I don't. So I have a reasonable expectation that my internet service provider is not going to share my IP address with anybody else. Is that what the, is that what we're talking about? Well, we're talking about not sharing it with the government. The Fourth Amendment is particularly concerned with government surveillance and government intrusions on individuals. It's a reasonable expectation of privacy. Right. And. Not just, you know, I don't, as far as I'm concerned, the government can stay away. I mean, I agree with you, but. Well, yes, and I. Do I have a reason that my IP, this IP address that's been assigned to my account  Is that what you're asking? Well, to my knowledge, internet service providers, I believe even under the store communications act, they can't provide it to the government without a subpoena. But can they provide it to third parties? If third parties want to buy a list of people who purchase dog food on a regular basis online, aren't they able to purchase that information? Your Honor. So that they can target their advertising to them? Well, they target it through the IP address. So all they need to know is the IP address in order to do that. And so that's what the internet service provider gives them. And that's why, you know, you may, you may get ads that you're not interested in because your son or your grandson or whoever's using your internet is interested in something. Well, then that begs the question as to whether or not there's an expectation of privacy in the IP address. Well, Your Honor, I, I've tried to explain today and in the briefs, and I would ask the court to review the Spencer decision, which does analyze this issue head on. Also, the Reed decision in New Jersey actually tackles this issue. And in this instance, the evidence should be suppressed because of all the laws the, um, the government violated in issuing the subpoena. May I ask a hypothetical? Yes, Your Honor. I get a phone call and I'm at home. I get a phone call. Sometimes the phone number's on television screen. I'm sorry, Your Honor, I couldn't. I get a phone call. I see the display of the phone number. It's an obscene phone call to me. Do I have to get a warrant to find out who owns that phone, that phone number? And it seems to be very analogous. I think the answer's no. And why isn't that the same principle? Well, Your Honor, I do believe that as a private citizen, you Well, I go, I go to the police department and say, look, this person's been harassing me, threatening me, extorting me, all those bad things. But I don't know who it is. I just know it's 305-665-6590. Can I not go to Comcast or AT&T and find out who is that person without a warrant? Actually, I believe statutes protect against providing that information. They do? Yes, the Stored Communications Act, I believe, and the Telecommunications Act protects against that. Does the Fourteenth Amendment or the Fourth Amendment protect it? Well, again, the Fourth Amendment protects against the kind of online surveillance that is possible. That's just one instance. But what's possible here is to do searches and find out what an individual has done previously for months and what an individual or entity does in the future. Okay. Thank you. We've explored this issue. Thank you. Pretty thoroughly. Thank you, counsel. We appreciate your arguments this morning. The matter is submitted.
judges: Paez, Rawlinson, Huck